THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF MICHIGAN *v.* JOHNSON NILES.

It is usual on allowing a demurrer for any cause which the Court sees, on the argument, may be obviated by amending the bill, to give leave to amend on paying the costs of the demurrer. But where the Court on the argument cannot see from the facts before it, how the objection on which the demurrer was sustained could be removed, it is necessary for the complainant to apply for leave to amend, by petition setting forth the additional facts sought to be incorporated in the bill.

The Supreme Court has no original equity jurisdiction and cannot act upon any facts which do not constitute a part of a case appealed from, and leave to amend can only be granted by the Court where the cause originated.

Where a petition was presented for leave to amend a bill, by inserting additional facts, after a decree sustaining a demurrer to the bill had been affirmed by the Supreme Court, on the same reasons which had governed this Court, *it was held*, that the application came too late.

A complainant wishing to amend his bill, must take the first opportunity after being made acquainted with the defects in it, to ask leave to do so.

COMPLAINANTS filed their bill in this Court for the specific performance of a contract for the sale of real estate, to which the defendant demurred; and the demurrer being allowed, *(vide ante 99,)* complainants appealed to the Supreme Court, where the order of this Court allowing the demurrer was affirmed; and on the case being remitted for further proceedings, they presented their petition for leave to amend.

*J. F. Joy*, for complainants.

*A. D. Fraser*, for defendant.

THE CHANCELLOR. It is usual, on allowing a demurrer for any cause, which the Court sees, on the argument, may be obviated by amending the bill, to give leave to

Bank of Michigan *v.* Niles.

amend, on paying the costs of a demurrer.   The proposed
amendment is not one of this character.   The Court could
not see, on the argument of the demurrer, from the facts
then before it, how the objection on which the demurrer
was sustained could be removed.   Hence the necessity of
complainants' founding their application on a petition,
stating the additional facts they wish to incorporate in
their bill.   Had they presented their petition on the allow-
ance of the demurrer, I should have permitted them to
amend.   They do not ask to change the substance of their
case, which would be inadmissible, but to make certain
facts, out of which the contract between them and defen-
dant originated, a part of their bill, for the purpose of
showing that defendant and one Turner had made a con-
tract with Pierson for the purchase of the Rochester mill
property, and that Turner had assigned his interest in that
contract to them, in payment of a debt, previous to their
contract with defendant; and, that the $5,000 they were
to pay Pierson, mentioned in their contract with defendant,
was a balance due Pierson on his contract with defendant
and Turner.   But it is insisted that this Court, the or-
der allowing the demurrer having been affirmed by the
Supreme Court, has not now the power to allow the amend-
ment; and that complainants should have made their ap-
plication to the Supreme Court, for leave to amend, instead
of making it to this Court, or that they should have obtained
leave of that Court to make the motion here.

Any person who may think himself aggrieved by the
decree or final order of this Court, *(R. S.* 379, § 121,)
may appeal therefrom to the Supreme Court; which may
reverse, affirm, or alter such order or decree, and make
such other order or decree therein, as justice or equity
shall require.   *R. S.* 380, § 125.   The Supreme Court has
no original equity jurisdiction.   In matters of equity it has

appellate powers only. It may affirm, reverse, or modify the final order or decree appealed from, upon the pleadings and proofs on which the cause was heard and determined in this Court. But no new facts in the cause can be elicited in that Court as the basis of its action, without making it a Court of original jurisdiction, as well as a Court of appellate jurisdiction; so far, at least, as the new facts are concerned, and have a bearing on the decree appealed from, or the practice of this Court. The appellate Court could not have entertained the present application, and granted the prayer of the petitioners, without acting in a matter that had not been before this Court, and from which, consequently, no appeal had been taken. The case of *Filkins* v. *Hill*, 4. *Bro. P. C.* 640, is no authority for the exercise of this power by the appellate Court. In that case the Chancellor's decree awarding a feigned issue was reversed, with leave to complainant to amend his bill, because the fact, to ascertain which the issue had been directed, was not put in issue by the pleadings; and the appellate Court, on reversing the order of the Chancellor, made such order as the Chancellor himself should have made from the facts before him. The appellate Court acted on the same facts that the Chancellor had acted on, and not on any new facts introduced into the case after the appeal had been taken.

Neither is the case of *Murray* v. *Coster*, 20 *J. R.* 576, as I view it, any authority for such power in the appellate Court. That was an appeal from an order overruling a plea of the statute of limitations. The Chancellor overruled the plea, because the case made by the bill was a case of trust, to which the statute of limitations could not be pleaded. The defendant appealed, and the order overruling the plea was affirmed; but for a different reason from that assigned by the Chancellor. The appellate

Bank of Michigan *v.* Niles.

Court decided the case made by the bill was not a trust, that the statute of limitations was a good plea, but that the answer accompanying the plea showed such an acknowledgment of the debt, as took it out of the statute. Thereupon a motion was made to send back the cause to the Chancellor, with directions to allow appellant to amend his answer; which was denied, on the ground that an amendment to the answer could affect nothing. It was not, therefore, necessary in that case for the appellate Court to decide on its power to give the directions asked. Ch. J. Spencer, whose opinion, throughout the case in the Court of Errors, prevailed, doubted the power of the Court to give the directions. He spoke of the case of *Filkins* v. *Hill*, as no authority for the application. He said it was "a novel application to a court of appeals," and "if the Court had the power, he should not be for exercising it."

In *Brown* v. *Idley*, 6 *Paige R.* 46, a decretal order of the Vice Chancellor, awarding a feigned issue to determine the validity of a will, was appealed from to the Chancellor, who affirmed the decree; and an appeal was then taken to the Court of Errors, where the decree was also affirmed. The cause being remitted to the Vice Chancellor, he allowed complainant to amend the bill by striking out the name of an infant complainant. From this last order an appeal was taken to the Chancellor, who reversed the order of the Vice Chancellor, on the ground that the amendment was not a mere matter of form, and that, after the cause had been heard on the pleadings and proofs, no other than mere formal amendments should be allowed; and those under special circumstances. He speaks of the decree of the Vice Chancellor having been affirmed by the Court of dernier resort, without any authority reserved to open or modify it. But I look upon this as an additional reason to what he had before stated, why the amendment

should not have been allowed, and not as a sufficient reason, of itself, for refusing the amendment. It does not appear to have been insisted on in opposing the amendment, either before the Chancellor or Vice Chancellor.

In *McElwain* v. *Willis and others*, 3 *Paige R.* 505, which was an appeal to the Chancellor, from the decision of the Vice Chancellor, allowing the several demurrers of Willis and Yardley, two of the defendants to a judgment creditor's bill, the decision of the Vice Chancellor as to Yardley's demurrer was affirmed, with leave to the complainant to apply to the Vice Chancellor to amend his bill. In this case, the demurrer was to a matter of form merely, and leave to amend had been asked on the argument of the demurrer before the Vice Chancellor, and should have been granted by him.

In *Jackson* v. *Ashton*, 10 *Pet. R.* 480, which was an appeal from the Circuit Court of the United States for the eastern district of Pennsylvania, the decree of the Circuit Court had been reversed by the Supreme Court, for want of jurisdiction,—the citizenship of one of the parties not appearing on the record. A motion was afterwards made in the Supreme Court to amend, which was denied. The Court say, however, " we entertain no doubt, that, notwithstanding any thing in the former decree of reversal, it is entirely competent for the Circuit Court, in their discretion, to allow the amendment now proposed to be made, and to reinstate the cause in that Court.

But the opinion of the Supreme Court affirming the order of this Court allowing the demurrer, it is contended, is the law of the case. It is no more the law of the case than the decision of this Court was the law of the case, in this Court, before it was affirmed. Of what case is the decision of the Supreme Court the law? Of the case upon the record, and of no other case; and this Court is

not asked to review that case, and reverse both its own decision and the decision of the Supreme Court, (for it could not do one without the other,) but to allow complainants to make a new case;—a case that has not been decided by either Court. There is no analogy between the present application and the case of *Gelston* v. *Codwise,* 1 *J. C. R.* 189. In that case there was an attempt made to litigate rights that had previously been decided on their merits by the appellate Court.

I am therefore of opinion the complainants have properly presented their petition to this Court; and the only question is whether they have not come too late with their application. I think they have. They should have presented their petition before they appealed, and made their case as perfect as it could be made before going to the appellate Court. The reasons for sustaining the demurrer were stated by the Court, when the demurrer was allowed; the complainants were aware of them, and the decision of this Court has been affirmed by the appellate Court, on the grounds taken by this Court. The present is not the first opportunity complainants have had to ask leave to obviate the objections raised to the bill by the demurrer. If it were, the case would be altogether different. If the decretal order of this Court had been affirmed for different reasons than those assigned by this Court, and the latter had been held invalid by the appellate Court, the complainants would stand on different ground from what they do. They could then say this was the first opportunity they had had, after being made acquainted with the defects in their bill, to ask leave to amend. Such an application would come with much force. But to grant the present application, under the circumstances, would be carrying the doctrine of amendments much further than any case has yet carried it, and encouraging appeals where they

are not necessary to the ends of justice. I know of no case that has gone this length, and I have been referred to none.

The solicitor's ignorance of the facts stated in the petition, until after the appeal had been taken, cannot place the complainants in a better position than they would have been in had they not appealed. The case was argued in this Court some months before it was decided, when the solicitor was made acquainted with the objections to the bill, and he should then have inquired of his clients whether they could be obviated in case the demurrer was sustained.

Motion denied.